IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

In re: SHERMAN WILSON HICKS, Jr. and        No. 2:25-bk-71560
       DIANNA LYNN HICKS, Debtors        Chapter 13

### ORDER AND OPINION DENYING MOTION TO AVOID LIEN

On January 20, 2026, the debtors filed an amended motion to avoid a lien [the motion] held by the City of Fort Smith [the City].[1] (Dkt. No. 51.) On February 10, the City filed a response to the motion. (Dkt. No. 66.) On February 16, the parties filed an Agreed Stipulation of Facts and jointly requested that the Court decide the motion without the introduction of further evidence. The Court held a hearing on February 18, at which time the parties presented their legal arguments. Keith Kannett appeared on behalf of the debtors. Ethan Bridgforth appeared on behalf of the City. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons stated below, the Court denies the debtors' motion to avoid lien.

As evidenced by the parties' Agreed Stipulation of Facts, which is incorporated herein by reference, the facts are not in dispute. The debtors own real property located at 4900 Arlington Avenue, Fort Smith, Arkansas 72904 [the property or subject property]. On October 28, 2024, Doug Mizell [Mizell], a property maintenance inspector employed by the City, conducted an initial inspection of the subject property and determined that the existence and presence of a dead tree and dead tree limbs [dead tree] on the property constituted a hazard in violation of Section 16-5 of the Fort Smith Municipal Code [code or ordinance violation]. On November 5, 2024, Mizell conducted a second inspection of the property, at which time he posted a "7 Day Clean Up Warning Notice" thereon. On November 6, the City mailed a warning notice letter to the debtors which advised that the

---

[1] The debtors filed their original motion to avoid lien on January 17 at docket entry 42, which they first amended on January 20 at docket entry 44 prior to filing the amended motion now before the Court.

property had been found in violation of municipal nuisance and property maintenance codes and advised that the debtors were required to correct the violations within seven (7) days.  On the same date, the City sent a similar letter to MERS, a company with a recorded mortgage interest in the subject property.  On November 8, the debtors received the November 6, 2024 warning notice letter from the City.  On November 26, Mizell conducted an inspection of the property at which time he posted a notice of abatement thereon and took photos and video of the property in order to secure competitive bids for abating the code violation, specifically, the removal of the dead tree.  On December 4, the City contracted with Juan's Tree Service LLC [contractor] for abatement of the code violation, which work was performed.  On December 10, Mizell inspected the property again and confirmed that the code violation had been abated.  The City paid the contractor $1750 to abate the code violation and incurred $164.01 in administrative costs relative to the abatement.  The total cost incurred by the City to abate the code violation at the debtors' property was $1914.01.  On December 16, 2024, the City filed a notice of lien against the property in the records of the Sebastian County Clerk's office for the costs the City incurred in its abatement of the code violation.

In their motion, the debtors seek to avoid the City's lien under 11 U.S.C. § 522(f), which provides in relevant part that "the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is . . . a judicial lien[.]"  11 U.S.C. § 522(f)(1).  The bankruptcy code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."  11 U.S.C. § 101(36).  The City contends that it has a statutory lien, which is not subject to avoidance under § 522(f).  The code defines a statutory lien as a "lien arising solely by force of a statute on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute."  11 U.S.C. § 101(53).  Therefore, the sole question before the Court is whether the City's lien is judicial or statutory.   As the movants, the debtors have "the burden of proving by a

2

preponderance of the evidence every element required to establish [their] entitlement to lien avoidance under [§] 522(f)." *In re Ballinger*, 502 B.R. 558, 562 (Bankr. E.D. Ark. 2013).

The Court begins its inquiry by examining the statute under which the City's lien was authorized. Arkansas Code Annotated section 14-54-903 defines three types of liens:

> (a) As used in this section:
>   (1)(A) "Clean-up lien" means a lien securing the cost of work undertaken by a town or city to remove, abate, or eliminate a condition in violation of local codes or ordinances.
>     (B) A clean-up lien may have priority against other lienholders as provided in this section;
>   (2) "Court lien" means a lien securing the fines or penalties imposed by a court of competent jurisdiction against the owner of an unsafe and vacant structure or weed lot for failure to comply with applicable building codes that have been secured by a court lien by action of the local governing body;
>   (3) "Priority clean-up lien" means a clean-up lien for work undertaken by a city or town on an unsafe and vacant structure or weed lot that is given priority status over other lienholders following notice and hearing[.]

Ark. Code Ann. § 14-54-903(a). As a threshold matter, the Court finds that the City's lien is a clean-up lien—not a court lien or a priority clean-up lien. The latter two liens relate to "unsafe and vacant structure[s]" or "weed lot[s]," neither of which has been alleged in regard to the debtors' property. Rather, as the parties stipulated, the presence of a dead tree on the debtors' property violated an ordinance, which the City abated after the debtors did not do so within a seven-day notice period.

According to the City, it followed the procedures set forth in Arkansas Code Annotated section 14-54-903(b) and (c)(1)-(2), which state:

> (b) If the owner or lienholder of any lot or other real property within an incorporated town or city neglects or refuses to remove, abate, or eliminate any condition under an ordinance passed by the city or town as provided in § 14-54-901, after having been given seven (7) days' notice in writing to do so, then the town or city may do whatever is necessary to correct the condition and to charge the cost thereof to the owner of the lots or other real property.

> (c)(1) The town or city is given a lien against the property for the costs, including all administrative and collection costs.
>
> (2) The town or city shall file the lien with the circuit clerk no later than one hundred twenty (120) days after the town or city completes the clean-up work on the property.

Ark. Code Ann. § 14-54-903(b), (c)(1)-(2).

Relying primarily on the court's reasoning in *In re Leaks*, 552 B.R. 741 (Bankr. E.D. Ark. 2016), the debtors argue that the City's lien is judicial because Arkansas Code Annotated section 14-54-903(f) and (h) provide, respectively, for a hearing and an appeal. The statute at issue in *In re Leaks* provided for hearings at which the debtor could dispute liability for the overpayment of unemployment benefits and opportunities to appeal administrative determinations. *See id*. Based on such provisions, the court found that

> the Arkansas Code provides for an extensive process that determines or adjudicates the existence and conclusive validity of the liability amount initially determined and asserted by the Director. This process is completed prior to the issuance of the Certificate on which the lien is predicated. Accordingly, the liens represented by the Certificates are the result of a process or proceeding within the meaning of the Code's definition of a judicial lien and as such are avoidable under section 522(f).

*In re Leaks*, 552 B.R. at 750.

Here, Arkansas Code Annotated section 14-54-903(f) states:

> (f) The amount of any clean-up lien or court lien provided in this section *may* be determined at a public hearing before the governing body of the city or town held after thirty (30) days' written notice by mail, return receipt requested, to the owner of the property if the name and address of the owner are known and to the lienholders of record.

Ark. Code Ann. § 14-54-903(f) (emphasis added). In response to the debtors' argument that the hearing contemplated in subsection (f) is similar to the administrative hearings discussed in *In re Leaks*, the City directed the Court to the wording of subsection (f), which states, in relevant part, that the "amount of any clean-up lien . . . *may* be determined at a public hearing . . . ." Based on the word "may," the City contends that a

4

hearing is authorized but not required by subsection (f). The Court agrees. When the name and address of the owner of the property are known—as was the case here—a hearing is not mandatory due to the statute's use of the word "may." *See Potter v. City of Tontitown*, 264 S.W.3d 473, 480 (Ark. 2007) ("[t]he first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary meaning and usually accepted meaning in common language.") The Court's interpretation of subsection (f) is bolstered when (f) is read in conjunction with subsection (g). *See Weas v. Montgomery*, 23 S.W.2d 969, 970 (Ark. 1930) (stating that a statute should be construed as a whole). Subsection (g) states:

> (g) If the name of the owner cannot be determined, then the amount of the clean-up lien or court lien *shall* be determined at a public hearing before the governing body of the city or town only after publication of notice of the hearing in a newspaper having a bona fide circulation in the county where the property is located for one (1) insertion per week for four (4) consecutive weeks.

Ark. Code Ann. § 14-54-903(g). Reading (f) and (g) together with subsections (b) and (c)(1) and (2), the Court finds that a clean-up lien may arise without a hearing when the name and address of the property owner are known but a hearing is required when the name of the owner cannot be determined.

In regard to the debtors' argument that the right to appeal contained in subsection (h) supports their contention that the City's lien—like the lien in *In re Leaks*—is judicial, the Court disagrees that such a right exists in this case. Subsection (h) provides:

> (h)(1) The determination of the governing body confirming the amount of any clean-up lien or court lien and creating and imposing any clean-up lien or court lien under this section is subject to appeal by the property owner or by any lienholder of record in the circuit court, filed within forty-five (45) days after the determination is made.

Ark. Code Ann. § 14-54-903(h)(1). Because the City did not hold a hearing—nor was it required to pursuant to the permissive language of subsection (f)— there was no "determination of the governing body" under subsection (h) that could be "subject to appeal by the property owner . . . within forty-five (45) days after the determination is made." Ark. Code Ann. § 14-54-903(h)(1). Without a determination, common sense

5

dictates that there is no right to appeal a determination.  As a result, the Court finds that subsection (h) is inapplicable.  *See Taylor v. City of Fort Smith*, 441 S.W.3d 36, 39 (Ark. Ct. App. 2014) ("[l]ien statutes are to be strictly construed.  Strict construction means that nothing is taken as intended that is not clearly expressed . . . . We will not read into a statute a provision that was not included by the General Assembly.")  In this instance, the Court declines to read into subsection (h) a right to appeal that exists independently of a prior "determination of the governing body."[2]

For the above-stated reasons, the Court finds that Arkansas Code Annotated section 14-54-903 entitled the debtors to neither a hearing nor an appeal, distinguishing the instant statute from the one at issue in *In re Leaks*.  "A statutory lien is limited and quantified; if certain events or circumstances occur as articulated in the statute, a lien arises that is statutory in nature and unavoidable."  *In re Leaks*, 552 B.R. at 747.  Further, "[a] lien arising by force of statute, without prior consent between the parties and not obtainable through judicial means by other creditors, is a statutory lien."  *Claussen v. Brookings County* (*In re Claussen*), 118 B.R. 1009, 1016 (Bankr. D.S.D. 1990).

Pursuant to Arkansas Code Annotated section 14-54-903(b), the City gave the debtors seven days in which to remedy the ordinance violation by removing the dead tree from their property, after which time the City was authorized to "do whatever [was] necessary to correct the condition and to charge the cost thereof to the owner of the lots or other real property."  Ark. Code Ann. § 14-54-903(b).  After the required seven days passed, the dead tree remained on the debtors' property and the City hired a contractor to abate the ordinance violation.  As a result, under Arkansas Code Annotated section 14-54-903(c)(1), the City was "given a lien against the property for the costs, including all administrative and collection costs[,]" which amounted to $1914.01.  The City filed its lien with the circuit clerk within 120 days after completing the work on the property.  Ark. Code Ann. § 14-54-901(c)(2); *see In re Shippy*, 646 B.R. 516, 520 (Bankr. W.D.

---

[2] The Court finds that the remaining subsections of Arkansas Code Annotated section 14-54-903 do not apply here because such subsections relate to deadlines hinging on the applicability of subsection (h) or to priority status, which the City has not sought in connection with its lien.

6

Wash. 2022) (citing *In re Schick*, 418 F.3d 321, 322 (3rd Cir. 2005) for the proposition that the docketing of a lien by a court clerk does not make a lien judicial).

The Court finds that the City's lien arose after the events and circumstances articulated in the statute occurred and the lien is limited to the costs expended by the City to abate the ordinance violation and quantified in the amount of those costs. The City's lien was not due to any prior consensual arrangement between the parties and could not have been obtained through judicial means by any creditor other than the City, which is the entity authorized by the statute to abate the ordinance violation in the event the debtors did not. For all of these reasons, the Court finds that the City's lien is statutory rather than judicial.

The character of the City's lien is not affected by Arkansas Code Annotated section 14-54-904, which addresses the enforcement of liens arising under section 14-54-903, and provides:

> (a) The liens provided for in § 14-54-903 may be enforced and collected at any time within ten (10) years after a lien has been filed in either one (1) of the following manners:
>   (1) By an action for foreclosure in the circuit court by the city or town, or if the city or town has established a land bank, by a land bank that has been assigned the lien; or
>   (2)(A) The amount so determined at the hearing, plus ten percent (10%) penalty for collection, shall be certified by the governing body of the municipality to the tax collector of the county where the municipality is located and placed by him or her on the tax books as delinquent taxes and collected accordingly.
>     (B) The amount, less three percent (3%) thereof, when so collected shall be paid to the municipality by the county tax collector.

Ark. Code Ann. § 14-54-904. Based on this section of the statute, in order to enforce and collect its lien on the debtors' property, the City may, within ten years following the filing of their clean-up lien, file a foreclosure action in circuit court or seek a hearing before the City's governing body for the purpose of obtaining a certification to be placed on the tax books and collected accordingly. Such actions do not convert the City's statutory lien into a judicial one. *See In re Newton*, 402 B.R. 771, 774 (Bankr. W.D. Ky. 2009) (finding that "[t]he fact that a judicial process may be involved after the

recordation of the certificate/lien, does not transform [the] lien from a statutory lien to a judicial lien.")

Because the Court finds that the City's lien is statutory rather than judicial, the lien is not subject to avoidance under § 522(f). Therefore, the Court denies the debtors' motion to avoid lien.

IT IS SO ORDERED.

Honorable Bianca M. Rucker
United States Bankruptcy Judge
Dated: 02/26/2026

cc: Keith Kannett, attorney for debtors
Ethan Bridgforth, attorney for City of Fort Smith
Joyce Bradley Babin, chapter 13 trustee
United States Trustee